UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MICHAEL HOLBROOK, MARPAT Aviation,
individually and as lessee of SUD
Aviation - SNIAS (Aerospatiale)
Allouette II Model SE-3130
Helicopter Serial Number 1133,

      Plaintiff,

v.                        Civil Action No. 2:10-cv-00374

UNITED STATES OF AMERICA,

      Defendant,

MEMORANDUM OPINION AND ORDER

Pending is the motion, filed May 19, 2010, of the
United States to dismiss the plaintiff's claim arising under the
Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680
("FTCA"), pursuant to Federal Rule of Civil Procedure 12(b)(1)
for lack of subject matter jurisdiction.

I.  Background

In October 2009, plaintiff Michael Holbrook initiated
this action against the United States under the FTCA, alleging
that the Federal Aviation Administration ("FAA") was negligent in
issuing a particular aircraft certification.  Specifically,
Holbrook alleged that the FAA was negligent in issuing a standard

airworthiness certificate to the Alouette Model II SE-3130 Helicopter, Serial Number 1133, Registration N31330 (the "Alouette Helicopter" or the "Helicopter").  To better understand Holbrook's claim, it is first necessary to discuss briefly the FAA's certification process.

A.   Regulatory Background

Congress has charged the FAA with promoting flight safety by establishing minimum standards for, among other things, aircraft design.  See 49 U.S.C. § 44701(a)(1).  Pursuant to this directive, the FAA has implemented a comprehensive set of rules and regulations, including a multi-step certification process, delineating the minimum safety standards with which aircraft designers and manufacturers must comply.  See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 804-807 (1984) (reviewing FAA's certification process). Two aspects of the design certification process are relevant to the instant dispute: the type certificate and the airworthiness certificate.

The first stage of the review process involves type certification.  A manufacturer wishing to introduce a new type of aircraft must first obtain FAA approval of the aircraft's basic

2

design in the form of a type certificate.  The manufacturer must submit to the FAA the designs, drawings, test reports, and computations necessary to show that the aircraft sought to be certificated satisfies FAA regulations.  See 14 C.F.R. §§ 21.17(a)(1), 21.21(a)(b).  The FAA reviews the data and, if it finds that the proposed aircraft design comports with minimum safety standards, issues a type certificate.  49 U.S.C. § 44704(a).  Upon receipt of a type certificate, and following additional steps in the certification process, the manufacturer may begin production of the approved aircraft.

Before any aircraft may be placed into service, however, the producer must first obtain an airworthiness certificate for each individual aircraft.  An airworthiness certificate denotes that the particular aircraft conforms to the specifications of the type certificate and is in condition for safe operation.  49 U.S.C. § 44704(d)(1).  An aircraft without an airworthiness certificate cannot be operated as a civil aircraft in air commerce.  Id. § 44711(a)(1).

The determination of whether an aircraft is eligible for an airworthiness certificate is made by, among others, an FAA airworthiness aviation safety inspector.  Importantly, the FAA has promulgated detailed regulations governing the issuance of

3

airworthiness certificates, including procedures for its safety inspectors to follow when assessing an aircraft's airworthiness. <u>See</u> 14 C.F.R. §§ 21.175-195.  Moreover, in 1999, the FAA issued an order setting forth specific guidelines regarding the procedures for issuing airworthiness certificates.  <u>See</u> Fed. Aviation Admin., Order 8130.2D, Airworthiness Certification of Aircraft and Related Products (1999) [hereinafter FAA Order 8130.2D].

Both the regulations governing the issuance of airworthiness certificates and FAA Order 8130.2D make clear that the type or origin of the aircraft determines (1) the procedure to be followed by the FAA safety inspector in assessing an application for an airworthiness certificate and (2) the evidence required of the applicant.  For example, pursuant to § 21.183 of Title 14 of the Code of Federal Regulations, a safety inspector reviewing an application for an airworthiness certificate for a new aircraft is obliged to follow different procedures and examine different evidence than an inspector reviewing an application for a used aircraft.  <u>See</u> <u>also</u> FAA Order 8130.2D at 27, ¶ 40(a)-(d).

In 2001, when the airworthiness of the Alouette Helicopter was under review, § 21.183 set forth four different

4

standards governing the issuance of an airworthiness certificate. The first two standards, found in paragraphs (a) and (b) of § 21.183, governed new aircraft and are not relevant in this matter.  See 14 C.F.R. §§ 21.183(a), (b) (2001).  The third standard, found in paragraph (c) and entitled "Import aircraft," provided that

> [a]n applicant for a standard airworthiness certificate for an import aircraft type certificated in accordance with § 21.29 [which governs type certification for import products] is entitled to an airworthiness certificate if the country in which the aircraft was manufactured certifies, and the Administrator [of the FAA] finds, that the aircraft conforms to the type design and is in condition for safe operation.

Id. § 21.183(c) (2001).  In other words, before an FAA safety inspector may issue an airworthiness certificate for an aircraft manufactured abroad and imported to the United States, the inspector must first receive a certificate demonstrating that the government of the export country has inspected the aircraft and found it in compliance with the aircraft's type certificate.

Finally, the fourth standard, found in paragraph (d) of § 21.183 and entitled "Other aircraft," prescribed as follows:

> An applicant for a standard airworthiness certificate for aircraft not covered by paragraphs (a) through (c) of this section is entitled to a standard airworthiness certificate if—
>
> > (1) He presents evidence to the Administrator that the aircraft conforms to a type design approved

5

under a type certificate . . . and to applicable
Airworthiness Directives;

(2) The aircraft . . . has been inspected in
accordance with the performance rules for 100-hour
inspections set forth in Sec. 43.15 of this
chapter and found airworthy by [inter alia, the
manufacturer] . . . ; and

(3) The Administrator finds after inspection, that
the aircraft conforms to the type design, and is
in condition for safe operation.

Id. § 21.183(d) (2001).  Although § 21.183(d) was a catch-all

provision, applying broadly to all aircraft "not covered by

paragraphs (a) through (c)," the FAA intended paragraph (d)

primarily to govern used aircraft.  See FAA Order 8130.2D at 37,

¶ 58(a) ("Section 21.183(d) is generally applicable to used

aircraft.").  Indeed, in 2006, the FAA amended § 21.183 to

clarify that paragraph (d) governed airworthiness certificates

for, inter alia, used aircraft.  See 14 C.F.R. § 21.183(d) (2009)

(governing issuance of airworthiness certificate for "used

aircraft or surplus aircraft of the U.S. Armed Forces").


        After granting an airworthiness certificate, the FAA

continues to monitor the safety of a certified aircraft and

retains broad powers to reinspect the aircraft at any time.  49

U.S.C. § 44709(a).  Moreover, the FAA may issue an order

amending, modifying, suspending, or revoking a previously issued

airworthiness certificate.  Id. § 44709(b).

6

B.   Factual and Procedural Background

        The FAA awarded a type certificate for the Alouette
Helicopter in January 1958.  (Pl.'s Resp., Ex. 5, at 4).  The
Helicopter was manufactured in France that same year and
ultimately imported to the United States in 2000.  (Mem. Supp.
Mot. to Dismiss 6; Id., Ex. C).  In October 2000, the owner of
the Helicopter applied to the FAA's Flight Standards District
Office in Salt Lake City, Utah, for an airworthiness certificate.
(Id., Ex. C).  Apparently in an effort to comply with §
21.183(c), which requires an applicant for an airworthiness
certificate for an import aircraft to submit a certificate from
the country in which the aircraft was manufactured, the owner of
the Helicopter submitted an "Attestation" from the Groupement
pour la Securite Aviation Civile, France's equivalent of the FAA.
The Attestation indicated, among other things, that the
Helicopter had been manufactured under the surveillance of the
French Military Authority and in accordance with the type
certificate awarded in 1958.  (Id., Ex. E).  Although the
Attestation further provided that the Helicopter was designed in
compliance with FAA standards, it stated that French authorities
had not inspected the Helicopter.  (Id.).

        On January 10, 2001, the FAA issued a standard

7

airworthiness certificate for the Alouette Helicopter to the
Helicopter's prior owner.  (Id., Ex. D).  In assessing the
application, Ralph W. Chadburn, the FAA safety inspector who
issued the airworthiness certificate for the Helicopter, applied
the standard set forth in § 21.183(c) inasmuch as the Helicopter
had been imported to the United States.  (Id., Ex. F, at 2).
Chadburn reviewed the relevant statutes and regulations,
including FAA Order 8130.2D, and concluded that, pursuant to §
21.183(c), the owner was obliged to submit a certification from
the exporting country that the Helicopter met its FAA-approved
type design and was in a condition for safe operation.  (Id.).
Chadburn consulted with his superiors, reviewed the Helicopter's
inspection history, and issued the airworthiness certificate,
determining that the Attestation submitted with the application
sufficed to satisfy the requirements of § 21.183(c).  (Id.).

        In 2003, plaintiff Michael Holbrook formed MARPAT
Aviation, LLC ("MARPAT"), a business in Logan County, West
Virginia, that provides helicopter flight instruction for the
general public.  (Compl. ¶ 14).  On January 2, 2004, MARPAT
agreed to lease the Alouette Helicopter from Mike's Contracting,
LLC, the Helicopter's current owner.  (Id. ¶ 15).  When he signed
the lease agreement, Holbrook knew that the FAA had issued an

airworthiness certificate for the Helicopter and he intended to use it to provide pilot training. (Id. ¶ 17). The Helicopter's airworthiness certificate was valid and in effect at the time MARPAT entered into the lease agreement. (Id. ¶ 16).

In late 2006, however, the FAA began a review of all Alouette helicopters, including the Alouette Helicopter that MARPAT had leased in 2004. (Mem. Supp. Mot. to Dismiss 2; Id., Ex. H, at 1). Specifically, the FAA was concerned that, inasmuch as the Alouette helicopters had originally been designed for use by various military organizations, the aircraft were not intended for civil certification. (Id., Ex. H, at 1). In April 2007, as part of its review into the Alouette helicopters, the FAA requested that Mike's Contracting, LLC, the owner of the Helicopter leased by MARPAT, provide an official certificate of airworthiness from the French government. Notwithstanding inspector Chadburn's earlier determination that the Attestation sufficed, the FAA deemed the document insufficient insofar as it did not certify that the French government had inspected the Helicopter. The FAA thus concluded that the Helicopter was not eligible for a standard airworthiness certificate. (Id.). On August 14, 2007, Holbrook received an Emergency Order of Suspension, suspending the Helicopter's airworthiness

certificate.  (Compl. ¶ 19).  As a result, MARPAT could no longer use the Helicopter in its flight school operation.  (Id. ¶ 29). On April 16, 2009, the FAA denied Holbrook's request to reconsider the suspension of the Helicopter's airworthiness certificate.  (Id. ¶ 3).

On October 14, 2009, Holbrook initiated this action in the United States District Court for the District of Columbia. The matter was transferred to this court on March 22, 2010, upon the D.C. district court's finding of improper venue.  In the complaint, Holbrook asserts a single count of negligence. Notably, Holbrook does not challenge the FAA's 2007 decision to suspend the Helicopter's airworthiness certificate.  Instead, he alleges that the FAA negligently issued the airworthiness certificate in 2001, as evidenced by its subsequent decision to suspend the certificate.  Holbrook asserts that, had FAA inspector Chadburn complied with the relevant regulations, an airworthiness certificate would not have been issued for the Helicopter, and MARPAT would not have entered into a costly agreement to lease the aircraft.  On May 19, 2010, the United States moved to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction, contending that the FAA's decision to issue an airworthiness certificate was protected by

the discretionary function exception to the FTCA.

### III.  Governing Standard

Federal district courts are courts of limited subject matter jurisdiction, possessing "only the jurisdiction authorized them by the United States Constitution and by federal statute." United States v. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2008).  As such, "there is no presumption that the court has jurisdiction."  Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999) (citing Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 327 (1895)).  Indeed, when the existence of subject matter jurisdiction over a claim is challenged under Rule 12(b)(1), "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists."  Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).  If subject matter jurisdiction is lacking, the claim must be dismissed.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

In considering a challenge to its subject matter jurisdiction, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the

pleadings without converting the proceeding to one for summary
judgment."  Evans, 166 F.3d at 647 (quoting Richmond,
Fredericksburg & Potomac, 945 F.2d at 768).  While not converting
a defendant's Rule 12(b)(1) motion to one for summary judgment,
the district court "should apply the standard applicable to a
motion for summary judgment, under which the nonmoving party must
set forth specific facts beyond the pleadings to show that a
genuine issue of material fact exists."  Richmond, Fredericksburg
& Potomac, 945 F.2d at 768.  The moving party should prevail
"only if the material jurisdictional facts are not in dispute and
the moving party is entitled to prevail as a matter of law."
Id.[1]

---

[1] Holbrook contends that the jurisdictional issue in this
dispute is inextricably intertwined with the merits of his claim,
precluding dismissal under Rule 12(b)(1).  See Kerns v. United
States, 585 F.3d 187, 193 (2009) (holding that Rule 12(b)(1) is
inappropriate avenue of dismissal if jurisdictional allegations
are intertwined with merits of plaintiff's FTCA claims).
Holbrook's reliance on Kerns is misplaced, however, for the
jurisdictional issue in that matter (whether a federal employee
was acting within the scope of her employment) was determinative
of both the jurisdictional inquiry and the merits of the
plaintiff's FTCA claims.  Id. at 194.  Here, by contrast, the
jurisdictional issue is whether the discretionary function
exception precludes liability, an issue the Fourth Circuit
labeled "wholly unrelated to the basis for liability under the
FTCA."  Id. at 196.  Accordingly, Holbrook's contention in this
regard is without merit.

# IV.  Analysis

The FTCA creates a limited waiver of the United States'
sovereign immunity by authorizing damage actions for injuries
"caused by the negligent or wrongful act or omission of any
employee of the Government while acting within the scope of his
office or employment . . . ."  28 U.S.C. § 1346(b)(1).  This
waiver of sovereign immunity, however, is subject to several
exceptions, "[t]he most important of [which] is the discretionary
function exception."  McMellon v. United States, 387 F.3d 329,
335 (4th Cir. 2004) (en banc).  The discretionary function
exception provides that the United States is not liable for "any
claim . . . based upon the exercise or performance or the failure
to exercise or perform a discretionary function or duty on the
part of a federal agency or an employee of the Government,
whether or not the discretion involved be abused."  28 U.S.C. §
2680(a).  The exception "marks the boundary between Congress'
willingness to impose tort liability upon the United States and
its desire to protect certain governmental activities from
exposure to suit by private individuals."  United States v. S.A.
Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S.
797, 808 (1984).  Congress enacted this exception to "prevent
judicial second-guessing of legislative and administrative

13

decisions grounded in social, economic, and political policy
through the medium of an action in tort . . . [and] to protect
the Government from liability that would seriously handicap
efficient government operations."  Id. at 814 (internal quotation
marks omitted).

          To determine whether conduct by a federal agency or
employee fits within the discretionary function exception, a
court must apply a two-prong test.  The court must first decide
whether the challenged conduct "involves an element of judgment
or choice."  Berkovitz v. United States, 486 U.S. 531, 536
(1988).  If the conduct does involve such discretionary judgment,
then the court must determine "whether that judgment is of the
kind that the discretionary function exception was designed to
shield," that is, whether the challenged action is "based on
considerations of public policy."  Id. at 536-37.  This inquiry
focuses "not on the agent's subjective intent in exercising the
discretion . . . , but on the nature of the actions taken and on
whether they are susceptible to policy analysis."  United States
v. Gaubert, 499 U.S. 315, 325 (1991).  Thus, "a reviewing court
in the usual case is to look to the nature of the challenged
decision in an objective, or general sense, and ask whether that
decision is one which we would expect inherently to be grounded

14

in considerations of policy." Baum v. United States, 986 F.2d 716, 720-21 (4th Cir. 1993).  Moreover, when a statute, regulation, or agency guideline permits a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.

A.  The First Prong of the Discretionary Function Analysis

        In asserting that the court possesses subject matter jurisdiction under the FTCA, Holbrook's primary contention concerns the first prong of the discretionary function analysis, namely, whether the challenged conduct involves an element of judgment or choice.  Holbrook concedes that, assuming the FAA safety inspector complies with the relevant regulations, the ultimate decision to issue an airworthiness certificate is protected by the discretionary function exception.  (Pl.'s Resp. 15).  He maintains, however, that FAA inspector Chadburn misapplied § 21.183 in issuing the airworthiness certificate for the Alouette Helicopter.  Specifically, Holbrook asserts that Chadburn was obliged to treat the Helicopter as a used aircraft and apply paragraph (d) of § 21.183.  Inasmuch as Chadburn instead considered the Helicopter an import aircraft and applied § 21.183(c), Holbrook contends that Chadburn deviated from a

15

mandatory regulatory scheme.  He thus concludes that the United
States is not immune from liability under the discretionary
function exception.

It is well established that "the discretionary function
exception will not apply when a federal statute, regulation, or
policy specifically prescribes a course of action for an employee
to follow."  <u>Berkovitz v. United States</u>, 486 U.S. 531, 536
(1988).  In such a situation, "the employee has no rightful
option but to adhere to the directive," meaning there is no
discretion in the conduct for the exception to protect.  <u>Id.</u>
Notwithstanding this well-settled principle, however, Holbrook's
contention must be rejected.  Put simply, the relevant regulatory
scheme did not require FAA inspector Chadburn to apply paragraph
(d), rather than paragraph (c), of § 21.183 in determining
whether to issue an airworthiness certificate for the Alouette
Helicopter.

To begin with, contrary to Holbrook's assertion, the
plain language of § 21.183 indicates that Chadburn properly
assessed the airworthiness of the Alouette Helicopter under
paragraph (c).  As explained, at the time Chadburn issued the
airworthiness certificate, § 21.183 included four different
procedures.  Paragraphs (a) and (b) set forth the procedures for

16

inspecting new aircraft, whereas paragraph (c) governed "import aircraft type certificated in accordance with Sec. 21.29." 14 C.F.R. § 21.183(a)-(c) (2001). Paragraph (d), meanwhile, applied to "other aircraft" "not covered by paragraphs (a) through (c)." Id. § 21.183(d). Under the provision's plain terms, then, an FAA safety inspector was to apply paragraph (d) only if the first three paragraphs did not cover the aircraft in question.

The Alouette Helicopter squarely fell under paragraph (c) of § 21.183, inasmuch as the Helicopter was manufactured in France and imported to the United States some years later. That the Helicopter was an "import aircraft" governed by paragraph (c) rendered paragraph (d) inapplicable. See 14 C.F.R. § 21.183(d) (2001) (governing aircraft "not covered by paragraphs (a) through (c)"). Accordingly, insofar as Chadburn complied with the mandate of § 21.183 and applied the procedure set forth in paragraph (c), he acted in furtherance of the policies leading to the FAA's promulgation of that regulation. See United States v. Gaubert, 499 U.S. 315, 324 (1991) ("[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation."). His decision to issue an airworthiness

17

certificate pursuant to paragraph (c) thus involved an element of judgment or choice.

Holbrook relies on FAA Order 8130.2D to suggest that paragraph (c) of § 21.183 applied only to <u>new</u> import aircraft and not <u>used</u> import aircraft like the Alouette Helicopter.  However, FAA Order 8130.2D is at best ambiguous on the issue.  For instance, paragraph 60 of that Order discusses § 21.183(d) in detail, noting that "[u]nder § 21.183(d), an applicant is entitled to a standard airworthiness certificate for aircraft that are . . . used (<u>to include § 21.29 aircraft</u>)."  FAA Order 8130.2D at 37, ¶ 60(a) (emphasis added).  The reference to § 21.29, which governs type certifications issued to import aircraft, suggests that used, import aircraft are to be inspected pursuant to paragraph (d) of § 21.183, with paragraph (c) reserved for new, import aircraft.  By contrast, paragraph 208 of the Order provides as follows:

> "Section 21.183(c) is the basis for issuing a U.S.
> standard airworthiness certificate for imported
> aircraft which have been type certificated by the FAA
> under the provisions of § 21.29.  The regulatory basis
> for issuance of U.S. standard airworthiness
> certificates to all other aircraft imported into the
> United States is § 21.183(d)."

FAA Order 8130.2D at 200, ¶ 208e(1)(a).  Pursuant to that directive, an FAA inspector would surely conclude that the

Alouette Helicopter, which was type certificated in accordance
with § 21.29, should be assessed under paragraph (c) of § 21.183.
In light of this ambiguity, the court cannot conclude that FAA
Order 8130.2D mandated that Chadburn apply paragraph (d) in
assessing the Helicopter.

        In any event, even assuming that FAA Order 8130.2D
unambiguously indicated that paragraph (c) of § 21.183 applied
only to new, import aircraft, that Order is merely a guideline.
See FAA Order 8130.2d at i ("These documents are intended as
guides and do not represent a total requirement for every
certification action . . . ."). The regulations themselves,
which unambiguously direct application of paragraph (c) to the
Alouette Helicopter, are mandatory in nature. See 14 C.F.R. §
21.171 (providing that regulations "prescribe[] procedural
requirements for the issue of airworthiness certificates"). The
court is unwilling to elevate recommended guidelines above the
FAA's unambiguous, mandatory regulations in assessing whether the
agency intended for paragraph (c) or paragraph (d) to govern used
import aircraft. See Indemnity Ins. Co. v. United States, 569
F.3d 175, 181 (4th Cir. 2009) (concluding that employee who
failed to abide by policy guideline possessed discretion because
guideline was merely a recommendation). Accordingly, the court

concludes, pursuant to the first inquiry in the discretionary function analysis, that the challenged conduct involves an element of judgment or choice.

**B.  The Second Prong of the Discretionary Function Analysis**

Having determined that the challenged conduct involves discretionary judgment, the court must next assess whether that conduct was "based on considerations of public policy." Berkovitz, 486 U.S. at 537.  Notably, the Supreme Court has held that when, as here, "established governmental policy, expressed or implied by . . . regulation . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.  Holbrook has put forward no evidence to carry his burden of showing that, in issuing an airworthiness certificate for the Alouette Helicopter pursuant to § 21.183(c), the FAA's acts were not grounded in considerations of public policy.

Moreover, that inspector Chadburn appears to have mistakenly concluded that the Attestation submitted with the Alouette Helicopter sufficed for purposes of § 21.183(c) is of no moment in the court's analysis.  See Indemnity Ins. Co., 569 F.3d

20

at 181 (rejecting contention that employee's mistake in carrying out discretionary task precludes application of discretionary function exception).  Indeed, as explained, the focus of the discretionary function analysis "is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."  Gaubert, 499 U.S. at 325.  The FAA inspector's judgment concerning the application of inspection standards based on safety considerations is precisely the type of policy decision the discretionary function exception is designed to protect.  See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 820 (1984) (concluding that judgments made by FAA employees in conducting aircraft inspections are entitled to protection under discretionary function exception); see also GATX/Airlog Co. v. United States, 286 F.3d 1168, 1179 (9th Cir. 2002) ("Although the FAA is charged with overseeing air safety, it would be paralyzed by the prospect that it could be held liable for making safety judgments in the approval process as a result of modifying its prior certifications.").  The court thus concludes that the conduct was based on considerations of public policy and is protected by the discretionary function exception.

## V.   Conclusion

Based upon the foregoing, it is ORDERED that the United States' motion to dismiss be, and it hereby is, granted.  It is further ORDERED that this action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: October 6, 2010

John T. Copenhaver, Jr.
United States District Judge